UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

MONICA SHIVER,

    Plaintiff,

v.                                                                     Case No. 8:23-cv-934-CPT

MARTIN O'MALLEY,
Commissioner of the
Social Security Administration,[1]
_____/

## **O R D E R**

The Plaintiff seeks judicial review of the Commissioner's denial of her claim for Supplemental Security Income (SSI) and Disability Insurance Benefits (DIB). (Doc. 13). For the reasons discussed below, the Commissioner's decision is affirmed.

I.

The Plaintiff was born in 1990 and does not any have past relevant work experience. (R. 26, 222, 230). In October 2020, the Plaintiff applied for SSI and DIB, alleging disability as of December 2019 due to various injuries she suffered in a car accident. *Id.* at 15, 17, 21, 222–33, 250. The Social Security Administration (SSA) denied the Plaintiff's applications both initially and on reconsideration. *Id.* at 15, 59–110.

---

[1] Mr. O'Malley became the Commissioner of Social Security on December 20, 2023. Pursuant to Federal Rule of Civil Procedure 25(d), Mr. O'Malley is substituted for the former Acting Commissioner, Kilolo Kijakazi, as the Defendant in this suit.

At the Plaintiff's request, an Administrative Law Judge (ALJ) conducted a hearing on the matter in July 2022. *Id.* at 34–58, 140–41. The Plaintiff was represented by counsel at that proceeding and testified on her own behalf. *Id.* at 34–58. A vocational expert (VE) also testified. *Id.*

In a decision issued in August 2022, the ALJ determined that the Plaintiff (1) had not engaged in substantial gainful activity since her alleged onset date in December 2019; (2) had the severe impairments of epilepsy, a neurocognitive disorder, a depressive disorder, and a traumatic brain injury, status post craniectomy; (3) did not, however, have an impairment or combination of impairments that met or medically equaled the severity of any of the listings;[2] (4) had the residual functional capacity (RFC) to perform light work subject to a number of limitations, including—as pertinent here—a restriction "to work that is simple as defined in the [Dictionary of Occupational Titles (DOT)][3] as SVP levels 1 and 2,[4] routine and repetitive tasks in a

---

[2] The listings are found at 20 C.F.R. Pt. 404, Subpt. P, App'x 1, and catalog those impairments that the SSA considers significant enough to prevent a person from performing any gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). When a claimant's affliction matches an impairment on the list, the claimant is automatically entitled to disability benefits. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii); *Edwards v. Heckler*, 736 F.2d 625, 628 (11th Cir. 1984).

[3] The DOT is "an extensive compendium of data about the various jobs that exist in the United States economy, and includes information about the nature of each type of job and what skills or abilities they require." *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1357 n.2 (11th Cir. 2018). The DOT is published by the Department of Labor and "is used by the Commissioner . . . to adjudicate benefit applications by claimants." *Viverette v. Comm'r of Soc. Sec.*, 13 F.4th 1309, 1311 (11th Cir. 2021) (citing 20 C.F.R. § 416.966(d)(1)).

[4] An SVP level is defined as "the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation." DICTIONARY OF OCCUPATIONAL TITLES, *App'x C Components of the Definition Trailer* § II, 1991 WL 688702 (G.P.O. 4th ed. 1991). An SVP of 1 requires a "[s]hort

work environment involving only simple[ ]work related decisions;" and (5) based on the VE's testimony, could engage in certain occupations that exist in significant numbers in the national economy. *Id.* at 15–27.  In light of these findings, the ALJ concluded that the Plaintiff was not disabled. *Id.* at 27.

The Appeals Council denied the Plaintiff's request for review. *Id.* at 1–6. Accordingly, the ALJ's decision became the final decision of the Commissioner. *Viverette*, 13 F.4th at 1313 (citation omitted).

## II.

The Social Security Act (the Act) defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than [twelve] months." 42 U.S.C. § 423(d)(1)(A); *see also* 20 C.F.R. §§ 404.1505(a), 416.905(a).[5]  A physical or mental impairment under the Act "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

To determine whether a claimant is disabled, the Social Security Regulations (Regulations) prescribe "a five-step, sequential evaluation process." *Carter v. Comm'r of Soc. Sec.*, 726 F. App'x 737, 739 (11th Cir. 2018) (per curiam) (citing 20 C.F.R.

---

demonstration only," while an SVP of 2 requires training of "[a]nything beyond [a] short demonstration up to and including [one] month." *Id*.
[5] Unless otherwise indicated, citations to the Code of Federal Regulations are to the version in effect at the time of the ALJ's decision.

3

§ 404.1520(a)(4)).[6] Under this process, an ALJ must assess whether the claimant: (1) is performing substantial gainful activity; (2) has a severe impairment; (3) has a severe impairment that meets or equals one of the listings; (4) has the RFC to engage in her past relevant work; and (5) can perform other jobs in the national economy given her RFC, age, education, and work experience. *Id.* (citing *Phillips v. Barnhart*, 357 F.3d 1232, 1237 (11th Cir. 2004); 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4)).  Although the claimant bears the burden of proof through step four, the burden temporarily shifts to the Commissioner at step five.  *Goode v. Comm'r of Soc. Sec.*, 966 F.3d 1277, 1278–79 (11th Cir. 2020) (citation omitted); *Sampson v. Comm'r of Soc. Sec.*, 694 F. App'x 727, 734 (11th Cir. 2017) (per curiam) (citing *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999)).  If the Commissioner carries that burden, the claimant must then prove she cannot engage in the work identified by the Commissioner.  *Goode*, 966 F.3d at 1279. In the end, "'the overall burden of demonstrating the existence of a disability . . . rests with the claimant.'" *Washington*, 906 F.3d at 1359 (quoting *Doughty v. Apfel*, 245 F.3d 1274, 1280 (11th Cir. 2001)).

A claimant who does not prevail at the administrative level may seek judicial review in federal court provided the Commissioner has issued a final decision on the claimant's disability application after a hearing. 42 U.S.C. § 405(g). Judicial review is confined to ascertaining whether the Commissioner applied the correct legal standards and whether the Commissioner's decision is buttressed by substantial

---

[6] Unpublished opinions are not considered binding precedent but may be cited as persuasive authority. 11th Cir. R. 36-2.

evidence. *Id.*; *Hargress v. Soc. Sec. Admin., Comm'r*, 883 F.3d 1302, 1305 n.2 (11th Cir. 2018) (per curiam) (citation omitted). Substantial evidence is "more than a mere scintilla" and is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (internal quotation marks and citations omitted). In evaluating whether substantial evidence bolsters the Commissioner's decision, a court may not decide the facts anew, reweigh the evidence, or make credibility determinations. *Viverette*, 13 F.4th at 1314 (citation omitted); *Carter*, 726 F. App'x at 739 (citing *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (per curiam)). Further, while a court will defer to the Commissioner's factual findings, it will not defer to his legal conclusions. *Viverette*, 13 F.4th at 1313–14; *Keeton v. Dep't of Health & Hum. Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citations omitted).

### III.

Although not entirely clear, the Plaintiff appears to raise two related challenges on appeal: (1) the ALJ erred at step five in assessing the Plaintiff's education level; and (2) the ALJ also erred at step five in relying on the VE's response to a hypothetical that purportedly did not reflect the Plaintiff's educational abilities. (Doc. 13). Each of these challenges will be addressed in turn.

### A.

As explained earlier, the ALJ's task at step five is to determine whether a claimant can engage in other occupations in the national economy given her RFC, age, education, and work experience. *See* 20 C.F.R. §§ 404.1520(a)(4)(v),

5

416.920(a)(4)(v). The term "education" in this context "primarily" refers to a claimant's "formal schooling or other training which contributes to [her] ability to meet vocational requirements[, such as] . . . reasoning ability, communication skills, and arithmetical ability." *Id.* §§ 404.1564(a), 416.964(a).

The Regulations make clear that a claimant's educational attainment is neither a medically determinable impairment nor an RFC consideration. *See id.* §§ 404.1564, 416.964. Rather, a claimant's education level is a vocational factor that goes into what work a claimant can perform. *See id.* §§ 404.1564, 416.964; *see also id.* §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). An ALJ must therefore assess a claimant's education level to decide whether a claimant can engage in other jobs in the national economy. *See id.* §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

The SSA has established several categories to assist in evaluating a claimant's education level. As relevant here, these categories include "limited education," "marginal education," and "illiteracy." *Id.* §§ 404.1564(b), 416.964(b). A claimant has a "limited education" if she has achieved between the seventh and eleventh grade levels of formal education and has "ability in reasoning, arithmetic, and language skills, but not enough to . . . do most of the more complex job duties needed in semi-skilled or skilled jobs." *Id.* §§ 404.1564(b)(3), 416.964(b)(3). A person with a "marginal education," on the other hand, has received "formal schooling at a [sixth] grade level or less" and has "ability in reasoning, arithmetic, and language skills which are needed to do simple, unskilled types of jobs." *Id.* §§ 404.1564(b)(2), 416.964(b)(2). By contrast, an illiterate person has little to no formal schooling and cannot "read or

6

write a simple message[,] such as instructions or inventory lists even though the person can sign . . . her name." *Id.* §§ 404.1564(b)(1), 416.964(b)(1).

In discerning which of these categories applies to a claimant, the SSA uses the claimant's numerical grade level to determine her educational abilities unless there is evidence to contradict that assessment. *See id.* §§ 404.1564(b), 416.964(b). The SSA may also consider a claimant's hobbies, daily activities, testing results, and/or past work experience and responsibilities. *Id.* §§ 404.1564(a), 416.964(a). Of import here, however, the SSA will not deem a claimant's education category to be lower than her highest level of formal education solely based on her individual history of having attended special education classes. *See* Social Security Ruling (SSR) 20-01p, 85 Fed. Reg. 13692, 13693–94 (Mar. 9, 2020).

In this case, the ALJ determined at step five that the Plaintiff "ha[d] a limited education." (R. 26). The Plaintiff takes issue with this finding, arguing that it is not sufficiently supported by the record. (Doc. 13 at 5). To bolster this contention, the Plaintiff asserts that although she attained the ninth grade,[7] she "count[s] really slow[ly]," cannot read well, has a memory impairment, is unable to complete basic arithmetic problems without error, attended special education classes due to dyslexia,[8] was reported to have difficulty with processing speed and remembering things, and

---

[7] As the Commissioner states in his memorandum and as the Plaintiff concedes in her submission, there is evidence in the record that the Plaintiff completed the tenth grade as well. *See* (Doc. 13 at 5); (Doc. 14 at 8); (R. 347, 696, 707).

[8] There is conflicting evidence in the record as to whether the Plaintiff participated in special education classes. (Doc. 14 at 1, 3, 8) (citing (R. 251)). For purposes of its analysis, the Court assumes—as the ALJ apparently did—that the Plaintiff did so.

7

once needed her mother to assist her with an interview. *Id.*; (R. 247, 261–62, 275, 300, 486–87, 707, 722). This argument fails.

In his decision, the ALJ recognized that the Plaintiff struggled with her memory and concentration and was only able to perform limited mental computations. (R. 18–19, 21, 23, 25, 257, 297–98, 487, 676). The ALJ additionally acknowledged that the Plaintiff's records indicated she had problems with reading instructions, understanding questions during examinations, and recalling what she was saying while speaking. *Id.* at 18–19, 21, 23, 25, 262, 302, 599, 603. The ALJ also noted that the Plaintiff's educational history included special education coursework stemming from her dyslexia. *Id.* at 18, 25, 97, 106, 486.

Notwithstanding this evidence, however, the ALJ observed that the Plaintiff reported she received fair grades despite her dyslexia and that she was able to follow spoken instructions very well. *Id.* at 18–19, 21, 262, 280, 486. The ALJ further observed that the Plaintiff's medical records revealed she had immediate, recent, and remote memory, that she presented with both normal thought process and fair to good judgment and insight, that she was able to provide multiple medical histories and was even described by one consultative examiner as an "adequate historian," and that no examiner found her to be inattentive or distracted. *Id.* at 18–19, 23–24, 487, 602, 667, 672–73, 706.

Along with this evidence, the ALJ commented that the Plaintiff was the primary caregiver for her three young children and that, although a single mother, the Plaintiff was able to run her household with only limited help from her mother. *Id.* at 18–21,

8

23, 25, 44–47, 50–51, 258–61, 298–301, 598–600, 603–04. The ALJ pointed out in this respect that the Plaintiff performed most of the responsibilities around her home, including cooking, cleaning, doing yard work and laundry, preparing her children for school, attending to her own personal care, managing the family's finances, and shopping for her and her children's necessities. *Id.* at 18–19, 21, 25, 45–47, 50–52, 258–61, 298–301, 603–04; *see also* SSR 20-01p (stating that evidence regarding, among other things, a claimant's "daily activities" and "hobbies" may reveal "that [the claimant's] actual educational abilities are higher or lower than his or her formal education level"). The ALJ additionally pointed out that the Plaintiff testified she took her children to activities and to the park, and also enjoyed playing games with them. (R. 21, 25, 46–47).

The above evidence, including the Plaintiff's admitted ninth grade level of education, her testimony about managing her family's finances and performing numerous other life skills, and the records reflecting her modest reasoning, language, and mathematical abilities constitute substantial evidence bolstering the ALJ's finding that the Plaintiff had a "limited education." *See Lewis v. Callahan*, 125 F.3d 1436, 1439–40 (11th Cir. 1997) ("We will not disturb the Commissioner's decision if, in light of the record as a whole, it appears to be supported by substantial evidence.") (citations omitted). Contrary to the Plaintiff's suggestion (Doc. 13 at 5), the fact that she may have taken special education classes does not alter this conclusion given the particular circumstances presented, *see* SSR 20-01p; *see also Daniels v. Comm'r of Soc. Sec.*, 2017 WL 747471, at *4 (S.D. Ga. Feb. 27, 2017) (finding that there was substantial evidence

9

to buttress an ALJ's "limited education" determination where the claimant was in special education classes for reading and math but reached the ninth grade and generally received passing grades or better), *report and recommendation adopted*, 2017 WL 1103567 (S.D. Ga. Mar. 23, 2017); *Jessie v. Astrue*, 2010 WL 2427095, at *4 (M.D. Fla. June 16, 2010) (deeming the ALJ's assessment that the claimant had a limited education to be adequately supported because the claimant went to school through the eighth grade, albeit with special education).

Nor is the Court persuaded by the Plaintiff's efforts to single out evidence that she believes substantiates her challenge. As the Eleventh Circuit has explained, a claimant must do more than identify "evidence in the record that supports her position; she must show the absence of substantial evidence supporting the ALJ's conclusion." *Sims v. Comm'r of Soc. Sec.*, 706 F. App'x 595, 604 (11th Cir. 2017) (per curiam) (citing *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991) (per curiam)). The Plaintiff does not do so here for the reasons stated above. And to the extent the Plaintiff now invites the Court to re-weigh the evidence and to decide the facts anew, the Court is prohibited from doing so. *Viverette*, 13 F.4th at 1314 (citation omitted); *Carter*, 726 F. App'x at 739; *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991) (citation omitted).

B.

The Plaintiff's second challenge—as noted above—is that the ALJ purportedly erred in relying on the VE's response to a hypothetical that did not accurately reflect the Plaintiff's educational abilities. (Doc. 13). This challenge fails as well.

10

It is well settled that an ALJ may rely on the testimony of a VE in making his step five finding. *Phillips*, 357 F.3d at 1239–40. To do so, an ALJ will "pose hypothetical question(s) to the [VE] to establish whether someone with the limitations that the ALJ has previously determined . . . the claimant [to have] will be able to secure employment in the national economy." *Id*. at 1240. The hypothetical questions the ALJ employs must include all of the claimant's functional limitations. *Pendley v. Heckler*, 767 F.2d 1561, 1563 (11th Cir. 1985) (per curiam). The ALJ, however, need not include in his hypothetical questions "each and every symptom of the claimant," *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1270 (11th Cir. 2007), or medical findings "the ALJ . . . properly rejected as unsupported," *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1161 (11th Cir. 2004) (per curiam).

In this case, the ALJ presented the VE with two hypotheticals. These hypotheticals followed the Plaintiff's testimony, during which the Plaintiff stated—as referenced above—that she attained the ninth grade and that, although she experienced difficulties with her memory, keeping track of things, and assisting her minor children with their homework, she was able to engage in a multitude of daily activities, including maintaining her home, providing for her children, handling the family finances, and tending to her own personal needs. (R. 38–39, 46–47, 50–51).

In the two hypotheticals, the ALJ told the VE to assume that the individual in question was subject to certain physical and environmental limitations and had the RFC to engage in "work at the light exertional level" or, alternatively, "work that[ was] simple, as defined in the DOT as SVP 1 and 2, routine and repetitive tasks

11

in a work environment involving only simple work-related decisions." *Id.* at 55–56. The ALJ then asked the VE, "[c]onsidering [the Plaintiff's] age, *education*, and work experience, are there jobs in the national economy that she could perform" given these parameters? *Id.* (emphasis added).

The VE responded that the hypothetical individual in either scenario could engage in the occupations of small products II assembler, blade balancer, and routing clerk. *Id.* The VE added that while all three of these jobs had an SVP of 2, the small products assembler and routing clerk positions had a reasoning level of 2 and the blade balancer position had a reasoning level of 1.⁹ *Id.* at 56–57.

The Plaintiff contends that the hypotheticals the ALJ posed to the VE were lacking because they did not reflect the Plaintiff's deficits in reading, math, language, and processing speed. (Doc. 13 at 5–6). And, the Plaintiff asserts, since the hypotheticals were flawed, so too were the VE's answers to them. *Id.* The Plaintiff maintains that, as such, the VE responses to the ALJ's hypotheticals cannot serve as substantial evidence bolstering the ALJ's disability determination. *Id.*

There are two problems with the Plaintiff's argument. First, as the Commissioner points out (Doc. 14 at 6), the ALJ's hypotheticals specifically directed

---

⁹ "Reasoning levels" are measured on a scale of one to six, with one requiring the least mental engagement and six requiring the most. *See generally Buckwalter v. Acting Comm'r of Soc. Sec.*, 5 F.4th 1315, 1322 (11th Cir. 2021). Level 1 and 2 reasoning levels are defined as follows: Level 1—"Apply commonsense understanding to carry out simple one- or two-step instructions. Deal with standardized situations with occasional or no variables in or from these situations encountered on the job;" and Level 2—"Apply commonsense understanding to carry out detailed but uninvolved written or oral instructions. Deal with problems involving a few concrete variables in or from standardized situations." *See* DICTIONARY OF OCCUPATIONAL TITLES, *supra*, at § III.

the VE to take into account the Plaintiff's "education" in rendering his assessment. (R. 55–56). Moreover, the VE was present at the hearing and heard the Plaintiff's testimony regarding her mental capabilities.

Second, even if the ALJ erred in describing the Plaintiff's educational abilities in his hypotheticals to the VE, any such error was harmless. While the Plaintiff disputes the ALJ's finding that she had a "limited education" (Doc. 13 at 5), she does not assert that she has less than a "marginal education," *id.* at 6 (offering only that the Plaintiff has "less than a limited education"). This is important because all of the occupations the VE listed are simple, unskilled jobs. *See* (R. 20, 26–27, 56–57); *see also* SSR 00-4p, 2000 WL 1898704 (Dec. 4, 2000) (noting that unskilled work corresponds to an SVP of 1–2). As a result, even if the ALJ found that the Plaintiff had a marginal education, she could still perform the unskilled jobs identified by the ALJ. *See* 20 C.F.R. §§ 404.1564(b)(2), 416.964(b)(2) (stating that a claimant with a marginal education has the ability to do "simple, unskilled types of jobs"); *see also Knight v. Comm'r of Soc. Sec.*, 783 F. App'x 962, 966 (11th Cir. 2019) ("[E]ven if [the claimant's] school records had indicated that she had only a marginal education, the VE identified only unskilled jobs for which a marginal education [was] sufficient. . . . Thus, any error the ALJ may have committed in finding that [the claimant] had a limited education—instead of a marginal education—was harmless."); *Battle v. Astrue*, 243 F. App'x 514, 522 (11th Cir. 2007) (finding that the ALJ's failure to characterize the claimant's education level as marginal was harmless because the job the VE specified in response to the hypothetical was an unskilled position, which can be performed by

13

someone with a marginal education); *Williams v. Barnhart*, 140 F. App'x 932, 936 (11th Cir. 2005) (deeming harmless the ALJ's failure to include in his hypothetical that the claimant read at a fourth grade level despite completing the ninth grade because a marginal education requires simple unskilled jobs and the only types of occupations the VE designated were unskilled jobs).

IV.

In light of all the above, it is hereby ORDERED:

1. The Commissioner's decision is affirmed.

2. The Clerk of Court is directed to enter Judgment in the Commissioner's favor and to close the case.

SO ORDERED in Tampa, Florida, this 28th day of September 2024.

*[signature]*
HONORABLE CHRISTOPHER P. TUITE
United States Magistrate Judge

Copies to:
Counsel of record